

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN         AUSTIN 11, TEXAS

XXXXXXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL


Honorable M. O. Flowers
Secretary of State
Austin, Texas

Dear Sir:         Attention:   Mr. C. P. Sanders

           Opinion No. 0-2077
           Re:   Does the application or certificate
               of the United Fraternal Benefit As-
               sociation, considered singly or to-
               gether, constitute a security with-
               in the meaning of the Securities
               Act?

       Your letter of March 14, 1940, requesting an opinion of this department on the above stated question, has been received.

       Your letter reads, in part as follows:

       "The United Fraternal Benefit Association, a corporation organized under Section 2 of Article 1302 of the Revised Civil Statutes of Texas, with a lodge form of government, whose charter was filed by the Secretary of State on the 18th day of October, 1939, desires to amend its charter under the provisions of Chapter 8 of Title 78 of the Revised Civil Statutes of Texas, in order to obtain authority to provide insurance benefits.

       "Under the provisions of Article 4838 of the Revised Civil Statutes, it is necessary that said association obtain not less than five hundred bona fide applications for such insurance benefits before it may obtain such authority. In furtherance of such desire, such association has prepared application blanks and a certificate of membership. The Association is now attempting to secure applications for membership from the general public and, in particular, from doctors living in the State of Texas, and a part of such application blank provides for appointment of doctors who make application for membership as

medical examiners and for the issuance of a cer-
tificate to them showing such appointment. Part
of the money collected from an applicant is set
aside as life-time dues of the number of such
association; part to the purchase of notes made
by other applicants and part to a mortuary fund.

"In the case of application by a doctor,
such company agrees to appoint such doctor as a
medical examiner for a certain designated dis-
trict and agree to pay him $1.00 for every mem-
ber examined by said doctor in his district and
to pay an additional sum of $4.00 if a detailed
medical examination is required.

"I am enclosing herewith a copy of the ap-
plication blank prepared and used by said associa-
tion, together with a copy of the certificate
issued by it to doctors who take memberships, for
your use in considering this request. The associa-
tion plans to employ agents on a commission basis
to secure such applications and contends that such
membership certificates are not securities, with-
in the meaning of the Texas Securities Act.

"Before passing on such contention, this De-
partment will appreciate the benefit of your ad-
vice as to whether or not such application or cer-
tificate, singly or together, constitutes a secur-
ity within the meaning of the aforesaid Securities
Act."

Article 600a, Vernon's Annotated Civil Statutes,
reads, in part, as follows:

"Section 2. The following terms shall, unless
the context otherwise indicates, have the follow-
ing respective meanings:

"(a)  The term 'security' or 'securities'
shall include any share, stock, treasury stock,
stock certificate under a voting trust agreement,
collateral trust certificate, equipment trust
certificate, preorganization certificate, or re-
ceipt, subscription or reorganization certifi-
cate, note, bond, debenture, mortgage certifi-
cate or other evidence of indebtedness, any form
of commercial paper, certificate in or under a
profit sharing or participation agreement, certi-
ficate or instrument representing any interest

in or under oil, gas or mining lease, fee or title,
or any certificate or instrument representing or
secured by an interest in any or all of the cap-
ital, property, assets, profits or earnings of
any company, investment contracts, or any other
instrument commonly known as a securtiy, whether
similar to those herein referred to or not. . . ."

The above mentioned application for membership and
appointment as a regional, medical advisor and examiner to
the United Fraternal Benefit Association, reads in part as
follows:

"IN CONSIDERATION of the premises set forth
in the recitals hereof and the benefits to accrue
to First and Second Parties by and through a con-
summation of the objects and purposes therein set
worth, it is agreed:

"Sec. 1.  The Second Party agrees tc pay to
the First Party the sum of $_____payable
as follows:  $_____cash, receipt whereof
is hereby acknowledged by First Party; and the
remainder of said sum shall be due and payable
in _____installments of $_____each
and _____ installments ___of $_____,
the first installment being due and payable on
the _____day of _____, 19___, and one in-
stallment being due and payable on the ____day
of _____next thereafter until all install-
ments are paid; said installment payments being
payable at Dallas, Dallas County, Texas, and shall
bear interest from maturity at the rate of _____
per centum per annum, and it is agreed that upon
failure to pay any installment as stipulated First
Party may, at its election, mature all remaining
unpaid installments, and further that if this ob-
ligation is placed in the hands of an attorney for
collection or if collected by suit or through the
probate court ten per centum additional on the
principal and interest then due shall be allowed
and recovered as attorneys fees.

"Sec. 11.  The funds set forth in Section I
hereof, as and when paid, it is agreed, shall be
used, expended and applied as follows:

"First:  The first 6 _____of said sum
shall be applied and allocated by First Party
to the payment of the life time dues of the Second

Party as stipulated and provided for in Section III of this agreement.

"Second:  Should any one or more of the applicants for insurance benefits referred to in the recitals hereof execute his or her note, notes or other evidence of indebtedness, in payment, in whole or in part, of the premium required to be paid for a benefit certificate or policy of insurance issued or to be issued to such applicant then so much of said fund as may remain after an allocation of the amount stipulated in subdivision First of this section, as may be requisite thereunto, may be used and applied by First Party, at its option, for the purchase by Second Party of such note, notes, or other evidence of indebtedness, or an interest therein, and thereupon such note, notes or other evidence of indebtedness so purchased with said funds, in whole or in part, shall be transferred to the Treasurer of the First Party, and his successors in office, without recourse on First Party to be held in trust by such Treasurer in his individual capacity as Trustee of the Second Party and such other party or parties, if any, whose funds may be used and employed by First Party in such purchase and sale; it being contemplated by First and Second Parties, and so agreed, that the funds of another person or other persons subscribing to the fund referred to in the recitals hereof may be so employed and used by First Party jointly with said funds of Second Party for the purchase of such purchases and sales.  The gains and losses, or either, arising or sustained by and through the said uses of said funds shall accrue to and be borne by the parties holding an interest in such note, notes or other evidence of indebtedness in the ratio or proportion of their respective investments therein.  The said Trustee, and his successors in office, shall hold and retain possession of every such note, notes or other evidence of indebtedness at the office of First Party in Dallas, Texas, and shall have power to collect the same, or any part thereof, execute receipts for payment thereof or thereon and to maintain suits thereon in his name as Trustee for the use and benefit of the beneficial owner or owners thereof, and he shall transmit, within fifteen days after receipt thereof, to Second Party all collections made thereon assignable to Second Party, less reasonable collection expenses incurred,

Honorable M. C. Flowers, Page 5

all collections made thereon assignable to Second Party, less reasonable collection expenses incurred, if any. First Party agrees to furnish to Second Party quarterly a written report of the amount of any outstanding obligations in which Second Party may be interested under the terms of this subdivision together with the name or names and postoffice address or addresses of the obligator or obligators insofar as it may be reasonably practical for First Party so to do.

"Third: Should there remain any balance of the funds referred to in Section I hereof after an application, appropriation and expenditure thereof as set forth in subdividions First and Second above, then such balance, or so much thereof as may be reasonably necessary thereunto, shall be set aside by First Party to create and provide the mortuary fund referred to in the recitals hereof, end thereupon shall be held inviolate for such purpose.

"BANK DRAFT AUTHORITY

_____, 19___
_____ Bank _____Town _____State
(Name of Bank)
"You are hereby authorized to pay _____
drafts drawn against my account by the United Fraternal Benefit Association, Dallas, Texas in the amount of _____ and charge same to my account, without further notice, until revoked by me in writing. In case funds are not available at the time draft arrives do not return the same until you notify me. I reserve the right to withdraw this authority at my option.

(Applicant Sign Banking Signature here)

"Fourth: Should there remain any balance of the funds referred to in Section I hereof after an application, appropriation and expenditure thereof as set forth in subdivisions First, Second and Third above, or either, then such balance shall be set aside by First Party for and placed in its general membership dues fund to be used by it in accordance with its rules and regulations governing such dues funds."

Under the above mentioned application, a physician makes application to the United Fraternal Benefit Association

tions applicable to such memberships or as the same may be thereafter altered, amended, modified or enlarged and agrees to pay said association, concurrently with the execution with said application a designated sum not to exceed Seventy Two Dollars ($72.00) paid in cash and in the event the total Seventy-Two Dollars is not paid a portion thereof is paid and the balance is to be paid in installments as set out in the application. The application for membership in the United Fraternal Benefit Association is also an application for appointment as a regional, medical advisor and examiner for said association. When the physician becomes a member of said association he is also appointed as a medical advisor and examiner for said association and for his services the association agrees to pay him the sum of $1.00 for every member examined by the said physician in his district and to pay an additional sum of $4.00 is a detailed medical examination is required.

The above memtioned certificate and application considered together is more than an application for membership in the United Fraternal Benefit Association and a contract of employment. The agreement as set out in the application specifically provides that "should any one or more applicants for insurance benefits referred to in the recitals hereof execute his or her note, notes or other evidence of indebtedness, in payment, in whole or in part, of the premium required to be paid for a benefit certificate or policy of insurance issued or to be issued to such applicant then so much of said fund as may remain after an allocation of the amount stipulated in subdivision First of this Section, as may be requisite thereunto, may be used and applied by First Party, at its option, for the purchase by Second Party of such note, notes, or other evidence of indebtedness, or an interest therein, and thereupon such note, notes or other evidence of indebtedness so purchased with said funds, in whole or in part, shall be transferred to the Treasurer of the First Party, and his successors in office, with out recourse on First Party to be held in trust by such Treasurer in his individual capacity as Trustee of the Second Party and such other party or parties, if any, whose funds may be used and employed by First Party in such purchase and sale; it being contemplated by First and Second Parties, and so agreed, that the funds of another person or other persons subscribing to the fund referred to in the recitals hereof may be so employed and used by First Party jointly with said funds of Second Party for the purposes of such purchases and sales. The gains and losses, or either, arising or sustained by and through the said uses of said funds shall accrue to and be borne by the parties holding an interest in such note, notes or other evidence of indebtedness in the ratio or proportion of their respective investments therein. . . ."

The above mentioned certificate and application, considered together is a profit sharing or participating agreement wherein both parties, namely, the physician and the United Fraternal Benefit Association, participate in the gains and losses, or either, arising or sustained by and through the uses of said funds.

After a careful study of the term "security" or "securities" as defined in the above mentioned Act in connection with the application and certificate of the United Fraternal Benefit Association, we are of the opinion that said application and certificate considered together constitutes a security within the meaning of the Securities Act.

It is to be specifically understood that we are not passing upon the authority of the issuing company to issue the kind and character of instrument or instruments as hereinabove mentioned. Neither are we passing upon any phase of the insurance law which may be applicable regarding the proposed amendment to the charter of the United Fraternal Benefit Association.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
Ardell Williams
Assistant

AW:IM:wc

APPROVED APRIL 8, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee by s/BWB Chairman